**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY**

| | |
|---|---|
| PHI HEALTH, LLC, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*,<br><br>Defendants. | No. 6:22-cv-00095-REW-EBA |

## <u>DEFENDANTS' MOTION TO TRANSFER AND SUPPORTING MEMORANDUM</u>

## INTRODUCTION

The lead Plaintiff in this action, PHI Health, LLC, is pursuing identical claims here and in a case filed earlier in the District of Columbia. In the first action, PHI Health's trade association, the Association of Air Ambulance Services, brought suit in November 2021 to challenge two interim final rules that the Defendants issued to implement the No Surprises Act. PHI Health has actively participated in that litigation and has submitted a declaration in that case to support the association's claim of standing there. That suit has proceeded to the filing of the administrative record, the briefing of cross-motions for summary judgment, and oral argument. Only after the District of Columbia action reached that advanced stage, PHI Health chose in April 2022 to file a second action, presenting the same claims, in this Court. To prevent the unnecessary expenditure of judicial resources, avoid wasteful and duplicative litigation, and avert the possibility of inconsistent judgments, Defendants respectfully move the Court, under the first-to-file rule, to transfer this case to the U.S. District Court for the District of Columbia.

As a matter of "comity among federal courts of equal rank," two district courts generally should not hear the same case simultaneously. *Baatz v. Columbia Gas Transmission, LLC*, 814 F.3d 785, 789 (6th Cir. 2016). Thus, under the "first-to-file" rule, "when actions involving nearly identical parties and issues have been filed in two different district courts, the court in which the first suit was filed should generally proceed to judgment," *id.*, and the second suit may be dismissed, stayed, or transferred and consolidated with the first, *see id.* at 793. "[I]t is the first-filed court that should apply the first-filed rule." *Delta T Corp. v. Ritchie Eng'g Co*., No. CV 5:11-208, 2011 WL 13234316, at *3 (E.D. Ky. Nov. 18, 2011). Accordingly, the role of the court hearing a later-filed case, such as this one, is limited to weighing whether the issues in the two cases "might substantially overlap" *id.*, and, if so, transferring the later-filed case to the court where the earlier-filed one is being heard, *id.* at 408 & n.6.

The issues in this case, at a minimum, "substantially overlap" with those presented in the District of Columbia action. Considerations of comity and the orderly administration of justice thus counsel in favor of transfer of this action to the U.S. District Court for the District of Columbia, so that that court may determine whether this case should be consolidated with its predecessor.

## RELEVANT BACKGROUND

### A.     The No Surprises Act

This case is about two interim final rules that the Defendants promulgated to implement the No Surprises Act (NSA or the Act). The principal aim of the NSA, enacted in late December 2020, is to address the phenomenon of surprise medical bills that result when a patient (particularly in an emergency) is unable to choose to receive care from an in-network provider. The NSA limits a patient's share of the cost of emergency services delivered by out-of-network providers,

including air ambulance providers, and prohibits the practice of "balance billing." *See* 42 U.S.C. §§ 300gg-111(a), 300gg-112(a).[1]

For services performed by these health care providers, the patient's cost-sharing responsibilities are calculated (unless a specified State law or an All-Payer Model Agreement applies) on the basis of what is known in the statute as the "qualifying payment amount" (QPA). *Id.* § 300gg-111(a)(1)(C)(ii), (a)(3)(H), (b)(1)(B). For air ambulance services, the patient's cost-sharing responsibilities are calculated on the basis of the rates that would apply for the services if they were furnished by a participating provider; this amount is the lesser of the billed amount or the QPA. *See* 42 U.S.C. § 300gg-112(a)(1); 86 Fed. Reg. 36,872, 36,884 (July 13, 2021). The QPA is defined, for a given item or service and for a given group health plan or insurer, as "the median of the contracted rates recognized" by the plan or insurer, measured with respect to the payment rates for "the same or a similar item or service that is provided by a provider in the same or similar specialty and provided in the geographic region in which the item or service is furnished," under all the plans offered by that insurer in a given insurance market. *Id*. §§ 300gg-111(a)(3)(E)(i)(I), 300gg-112(c)(2). The statute thus textually treats the "qualifying payment amount," calculated in this manner, as a reasonable proxy for what the in-network payment rate would have been for a given out-of-network service. Congress instructed the Defendants to issue rules by July 1, 2021, to set the methodology for determining the qualifying payment amount. *See id.* § 300gg-111(a)(2)(B).

---

[1] The statute sets forth parallel amendments to the Public Health Service Act (PHSA), the Employee Retirement Income Security Act, and the Internal Revenue Code, and the interim final rules set forth parallel regulations implemented by HHS, the Department of Labor, and the Department of the Treasury. For ease of reference, except where otherwise noted, this brief cites only to the PHSA and to the HHS regulations.

Where balance billing of the patient is prohibited, the Act also addresses how a payment dispute between an out-of-network health care provider and a group health plan or health insurance issuer will be resolved. *See id*. §§ 300gg-111(c)(1), 300gg-112(b)(1). The Act creates an arbitration mechanism ("independent dispute resolution" or "IDR" process) whereby each party will submit its proposed payment amount and an independent, private arbitrator, known as a "certified IDR entity," will select between the two offers. *Id*. §§ 300gg-111(c)(5), 300gg-112(b)(5). Congress also directed the Defendants to create rules to establish this arbitration process, and to do so within one year of the NSA's enactment. *Id*. §§ 300gg-111(c)(2), 300gg-112(b)(2).

Congress was particularly concerned with the problem of surprise billing in the air ambulance industry, and so the NSA contained several provisions specifically addressing the problem of surprise billing for air ambulance services. *See* 42 U.S.C. § 300gg-112 ("Ending surprise air ambulance bills"). The Act includes one set of statutory provisions addressing the arbitration of payment disputes involving physicians or other health care providers, *see id.* § 300gg-111, and a separate set of provisions addressing payment disputes involving air ambulance service providers, *see id.* § 300gg-112. The air ambulance provisions lay out factors unique to that industry for arbitrators to consider when deciding on a payment amount. *Id*. § 300gg-112(b)(5)(C)(ii).

The Defendants issued two sets of interim final rules to implement the Act. In July 2021, they issued rules addressing the calculation of the qualifying payment amount. 86 Fed. Reg. 36,872, 36,874 (July 13, 2021). In October 2021, they issued a second set of rules governing the arbitration of payment disputes between physicians and health care facilities and plans or issuers,

as well as rules governing arbitrations between air ambulance service providers and plans or issuers. 86 Fed. Reg. 55,980 (Oct. 7, 2021).

The Eastern District of Texas issued a decision earlier this year that vacated certain portions of the regulations in the October 2021 interim final rule governing arbitrations involving physicians and health care facilities. *Tex. Med. Ass'n v. HHS*, No. 6:21-cv-00425, 2022 WL 542879 (E.D. Tex. Feb. 23, 2022) (vacating portions of 45 C.F.R. § 149.510). The Defendants are preparing a final rule that they anticipate will supersede the vacated portions of 45 C.F.R. § 149.510, as well as portions of the separate regulation under 45 C.F.R. § 149.520 involving the arbitration of air ambulance payment disputes. The Defendants anticipate that these rules will be published in the coming weeks. The Defendants have filed a notice of appeal to the Fifth Circuit of the judgment in *Texas Medical Association*. In light of the forthcoming rulemaking, the Defendants filed an unopposed motion to hold that appeal in abeyance, which the Fifth Circuit granted. *Tex. Med. Ass'n v. HHS*, No. 22-40264, 2022 WL 1632580 (5th Cir. May 3, 2022).

### B.    Proceedings in *Association of Air Medical Services*

In November 2021, the Association of Air Medical Services filed a two-count complaint in the U.S. District Court for the District of Columbia challenging the regulations concerning air ambulance service providers. Compl., *Ass'n of Air Med. Servs. v. HHS.*, No. 1:21-cv-03031 (D.D.C.), ECF No. 1 (attached as Exhibit A), *consolidated with Am. Med. Ass'n v. HHS*, No. 1:21-cv-03231 (D.D.C). There, the Association of Air Medical Services described itself as the international trade association that represents over 93% of air ambulance providers in the United States. Compl. ¶ 20, *Ass'n of Air Med. Servs.*, ECF No. 1. The association supported its claim to standing in that action by alleging that its members, including PHI Health, LLC, would suffer a

loss of revenue under the rule. *Id.* ¶ 123; *see also* Decl. of Grayson Michael Foster, *Ass'n of Air Med. Servs.*, ECF No. 1-5 (declaration of Chief Financial Officer of PHI Health).

The association, acting on behalf of PHI Health and its other members, challenged the July 2021 and October 2021 interim final rules on multiple grounds. First, it asserted that the July 2021 rule arbitrarily excluded "case-specific agreements" from the calculation of the qualifying payment amount. Pl.'s Mem. in Supp. of MSJ at 22, *Ass'n of Air Med. Servs.*, ECF No. 5-1. Second, it asserted that that rule unlawfully failed to distinguish between hospital-based air ambulance service providers and independent air ambulance service providers in the QPA calculation. *Id.* at 27. Third, it asserted that the July 2021 rule established overly broad geographic regions to be used in calculating the qualifying payment amount. *Id.* at 29. Fourth, it asserted that the July 2021 rule unlawfully limited patient's cost-sharing responsibilities by reference to the qualifying payment amount. *Id.* at 31. Fifth, it asserted that the October 2021 rule unlawfully created a presumption that arbitrators should award the qualifying payment amount as the out-of-network payment amount in disputes between air ambulance service providers and plans or issuers. *Id.* at 15.

The parties in *Association of Air Medical Services* have fully briefed cross-motions for summary judgment, based on an administrative record that spans more than 6,000 pages. *See Ass'n of Air Med. Servs.*, No. 1:21-cv-03031 (D.D.C.), ECF Nos. 5, 10, 11, 31, 44 (parties' briefs); *id.*, ECF No. 12-1 (index to administrative record). Numerous amici have filed briefs in the *Association of Air Medical Services* action, including amici asserting interests unique to the context of surprise billing by air ambulance service providers. *Id.*, ECF Nos. 17, 20, 21, 24, 27, 33, 34, 35, 36, 37 (amicus briefs). Judge Richard J. Leon held oral argument on March 21, 2022, and the summary judgment motions remain pending. *See id.*, (minute entry Mar. 21, 2022); *id.*, ECF No. 57 (transcript of proceedings).

C.     This Case

On April 29, 2022—over five months after the complaint in *Association of Air Medical Services* was filed, and over a month after oral argument was held in that case—Plaintiffs filed a complaint in this Court challenging the same regulatory provisions that are at issue in the action pending before Judge Leon. ECF No. 1.[2] The lead Plaintiff is PHI Health, LLC, which, as noted above, is a member of the Association of Air Medical Services and has actively participated in the litigation pending in the District of Columbia.

The Plaintiffs here assert challenges to the July 2021 and October 2021 rules on substantially the same grounds as those presented in the District of Columbia action. They assert that the July 2021 rule arbitrarily excluded "case-specific agreements" from the calculation of the qualifying payment amount. Compl. ¶ 213, ECF No. 1. They assert that the July 2021 rule unlawfully failed to distinguish between hospital-based air ambulance service providers and independent air ambulance service providers in the QPA calculation. *Id.* ¶ 219. They assert that the July 2021 rule established overly broad geographic regions to be used in calculating the qualifying payment amount. *Id.* ¶ 208. They assert that the July 2021 rule unlawfully limited patient's cost-sharing responsibilities by reference to the qualifying payment amount. *Id.* ¶ 228. They also assert that the October 2021 rule unlawfully created a presumption that arbitrators should award the qualifying payment amount as the out-of-network payment amount in disputes between air ambulance service providers and plans or issuers. *Id.* ¶ 183. Their complaint also

---

[2] Counsel for Plaintiffs in this case also represent LifeNet, Inc.—an air ambulance service provider that is in a business partnership with Air Methods Corporation, which is another member of the Association of Air Ambulance Services—in an action that was filed two days before this one in the Eastern District of Texas bringing similar challenges to the regulations promulgated under the No Surprises Act. *See* Compl., *LifeNet, Inv. v. HHS*, No. 6:22-cv-00162-JDK (E.D. Tex. Apr. 27, 2022), ECF No. 1. The Departments have also moved to transfer that action to the District of Columbia.

includes additional statutory, procedural, and constitutional claims that were not (but could have been) presented in the association's action, including claims that the July 2021 and October 2021 rules violate the Takings Clause and the Due Process Clause of the Fifth Amendment. *Id.* ¶¶ 236, 253.

## ARGUMENT

### This Case Should Be Transferred to the U.S. District Court for the District of Columbia under the First-to-File Rule

The issues in this case are, at a bare minimum, substantially similar to the issues that have been fully briefed and argued in *Association of Air Medical Services*, and Plaintiffs here seek the same relief sought in that case.[3] The Court should therefore transfer this action to the U.S. District Court for the District of Columbia under the first-to-file rule, so that that court may determine whether this case should be consolidated with its predecessor.

"The first-to-file rule is a prudential doctrine that grows out of the need to manage overlapping litigation across multiple districts." *Baatz v. Columbia Gas Transmission, LLC*, 814 F.3d 785, 789 (6th Cir. 2016). "As between federal district courts, ... the general principle is to avoid duplicative litigation." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). Accordingly, the first-to-file rule provides that "when actions involving nearly identical parties and issues have been filed in two different district courts, the court in which the first suit was filed should generally proceed to judgment." *Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535, 551 (6th Cir. 2007). "[T]he rule of thumb [is] that the

---

[3] The Departments have explained that, even if the national association were to prevail in the *Association of Air Medical Services* action, any relief should be limited to the national association, or its identified association members. *See* Defs.' Reply Mem. in Supp. of Their Cross-Mots. For S.J. at 27, *Ass'n of Air Med. Servs.*, ECF No. 44. For similar reasons, if Plaintiffs were to prevail here, any relief should be appropriately limited.

8

entire action should be decided by the court in which an action was first filed." *Smith v. SEC*, 129 F.3d 356, 361 (6th Cir. 1997). "This rule encourages comity among federal courts of equal rank[,] conserves judicial resources by minimizing duplicative or piecemeal litigation, and protects the parties and the courts from the possibility of conflicting results." *Baatz*, 814 F.3d at 789 (internal quotation omitted).

In cases involving the first-to-file rule, the court in which the second action was filed plays only a limited role. "The majority of courts hold that it is the first-filed court that should apply the first-filed rule." *Delta T Corp. v. Ritchie Eng'g Co*., No. CV 5:11-208, 2011 WL 13234316, at *3 (E.D. Ky. Nov. 18, 2011); *see also Save Power Ltd. v. Syntek Fin. Corp*., 121 F.3d 947, 950 (5th Cir. 1997). "'Once the [second] district court [finds] that the issues *might* substantially overlap, the proper course of action [is] for the court to transfer the case to the first-filed court to determine which case should, in the interests of sound judicial administration and judicial economy, proceed.'" *Delta T Corp.*, 2011 WL 13234316, at *3 (emphasis added) (quoting *Cadle Co. v. Whataburger of Alice, Inc*., 174 F.3d 599, 606 (5th Cir. 1999)). Upon concluding that the first-to-file rule might be implicated here, then, the appropriate course of action here is to transfer this action to the District of Columbia to allow that district court to determine whether to apply the rule. *See id.*; *see also Paige v. BitConnect Int'l PLC*, No. 3:18-CV-058-CHB, 2018 WL 11309178, at *3 n.2 (W.D. Ky. Nov. 9, 2018).[4]

---

[4] This Court may also exercise its discretion to stay or dismiss the second-filed action. *See Baatz*, 814 F.3d at 793; *Quality Assocs., Inc. v. Procter & Gamble Distrib. LLC*, 949 F.3d 283, 288 (6th Cir. 2020). Although the choice of a remedy is committed to this Court's discretion, the Defendants respectfully submit that a transfer is the most appropriate course of action, to allow PHI Health's two sets of challenges to the interim final rules to be heard together. At a minimum, a stay of these proceedings would be warranted to prevent duplicative proceedings from going forward in two courts at the same time.

In applying the first-to-file rule, the Sixth Circuit evaluates three factors: "the chronology of events, (2) the similarity of the parties involved, and (3) the similarity of the issues or claims at stake." *Baatz*, 814 F.3d at 789 (citing *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 625 (9th Cir. 1991)). "If these three factors support application of the rule, the court must also determine whether any equitable considerations, such as evidence of 'inequitable conduct, bad faith, anticipatory suits, or forum shopping,' merit not applying the first-to-file rule in a particular case." *Id.* (quoting *Certified Restoration*, 511 F.3d at 551-52) (internal alterations omitted).

Each of these factors weighs in favor of transfer of this action to the District of Columbia. First, the chronology of events supports transfer. "The dates to compare for chronology purposes of the first-to-file rule are when the relevant complaints are filed." *Baatz*, 814 F.3d at 790. The Association of Air Medical Services filed its complaint in the District of Columbia on November 16, 2021. Compl., *Ass'n of Air Med. Servs.*, ECF No. 1. That action has proceeded to the filing of a voluminous administrative record, the briefing of cross-motions for summary judgment, and oral argument. In contrast, Plaintiffs filed their complaint in this action on April 29, 2022, more than a month after Judge Leon heard oral argument in the association's lawsuit. Compl., ECF No. 1.

Second, the similarity of the parties involved weighs in favor of transfer. Both actions involve the same set of Defendants. And, as noted above, the lead Plaintiff here, PHI Health, is a member of the trade association plaintiff in the first-filed action, the Association of Air Medical Services. It has actively participated with its association in the District of Columbia litigation, and the association has supported its claim to standing in that litigation by asserting that PHI Health faces an injury under the challenged rules. There is, accordingly, a substantial overlap between this case, in which PHI Health litigates on its own behalf, and the District of Columbia action, in which PHI Health is litigating the same claims through its association. The presence of a co-

plaintiff, Empact Midwest, LLC, in this action does not change the analysis. The first-to-file rule requires only that the parties "substantially overlap," not that they be "perfectly identical." *Baatz*, 814 F.3d at 790. Were the rule otherwise, a party could easily defeat the first-to-file rule, and litigate the same claims in multiple courts at the same time, through the simple expedient of joining in multiple actions with new co-plaintiffs.

Third, the similarity of the issues or claims at stake also supports transfer. "Just as with the similarity of the parties factor, the issues need only to substantially overlap in order to apply the first-to-file rule." *Baatz*, 814 F.3d at 791. "The [overlapping] issues need not be identical, but they must 'be materially on all fours' and 'have such an identity that a determination in one action leaves little or nothing to be determined in the other.'" *Id.* (quoting *Smith v. SEC*, 129 F.3d 356, 361 (6th Cir. 1997)). In this action, PHI Health seeks to litigate claims that are identical to the claims that it is pursuing through its association in the District of Columbia action. In both actions, it challenges the rule governing the calculation of the qualifying payment amount on the grounds that the rule unlawfully excludes case-specific agreements from the QPA calculation, that the rule unlawfully treats hospital-owned and independently-owned air ambulance providers alike, and that the rule improperly defines the geographic regions to be used for the QPA calculation. In both actions, it contends that the Departments' rules unlawfully limit the amount that it can collect in cost-sharing from patients for out-of-network services. And in both actions, it contends that the Departments' rules unlawfully require arbitrators to presume that the QPA represents the appropriate payment amount for an out-of-network service. Because PHI Health pursues the same claims in both actions, a judgment against the association in the District of Columbia action would "leave[] little or nothing to be determined" here. *Baatz*, 814 F.3d at 791. And it is immaterial that

PHI Health is pursuing additional statutory and constitutional claims in this action; the issues need only "substantially overlap" between the two actions for the first-to-file rule to apply. *Id.*

Finally, the equitable considerations also support transfer. Where the first three factors support transfer—as they do here—the Court should be reluctant to deny a transfer motion. As the Sixth Circuit has cautioned, "deviations from the rule should be the exception, rather than the norm." *Baatz*, 814 F.3d at 792; *see also id.* at 793 ("declining to apply the first-to-file rule should be done rarely"). Transfer of this action to the District of Columbia simply "ensure[s] that all the issues are litigated in a single case" and "consolidate[s] the cases in the forum where the litigation is more developed." *Id.* at 792-93. There are thus no equitable reasons to avoid deferring to the Court that first took jurisdiction over the claims presented here.

The Seventh Circuit's decision in *National Health Federation v. Weinberger*, 518 F.2d 711 (7th Cir. 1975), is instructive. There, much like here, after one organization challenged a pair of regulations in the Southern District of New York, another organization challenged the same regulations in the Northern District of Illinois. *Id.* at 712. The Seventh Circuit held that the district court should have dismissed the second-filed suit because the two cases raised the same issues— an outcome that was "particularly appropriate" given that the first-filed suit was at a more "advanced stage" and involved review of a "voluminous" administrative record. *Id.* at 712-13 & n.2. That the plaintiffs in the second-filed case differed from those in the first worked no inequity, the court explained, since the "dismissal would operate without prejudice." *Id.* at 713-14. Moreover, observing that "counsel for plaintiffs, prior to filing the [second] suit here, were aware of the [first-filed] suit" in the Southern District of New York, and "could have … as easily brought" their claims "in that district, which might then have led to a consolidation of the suits," the court suggested that "the filing of the [second] complaint here smacks of gamesmanship." *Id.* at 714.

Such concerns are even more pronounced in this case, given that PHI Health would presumably argue that it should benefit from a judgment in *Association of Air Medical Services* in its favor, a prospect that would pose a particularly acute risk of inconsistent judgments were this suit, concerning identical issues, to proceed in a separate forum. *Cf. West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 731 n.5 (5th Cir. 1985) (noting that the "local union defendants are in privity with the ILA and working in concert with the ILA and could be bound by any injunction the [first-filed] court … might issue"). Indeed, while the first-to-file rule does not require analysis of the potential res judicata effect of an earlier suit on a later one, *see Cadle*, 174 F.3d at 603-05, it is well established that a final judgment in a suit brought by an organization on behalf of its members can bind the members. *See, e.g.*, *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1083-84 (9th Cir. 2003) (plaintiffs' "membership in and close relationship with the Association is sufficient to bind them as parties in privity for res judicata purposes"). Given that a judgment in the *Association of Air Medical Services* suit could potentially bind PHI Health and other air ambulance service providers, the practical effects of navigating inconsistent judgments could be particularly burdensome for all involved.

Regardless, even if the potential res judicata effect of a judgment in *Association of Air Medical Services* were less clear, an in-depth analysis of this issue goes well beyond the limited role that the second-filed court plays under the first-to-file rule. Here, given the similarity of parties and claims, at a minimum the issues in the two cases "*might* substantially overlap," *Delta T Corp.*, 2011 WL 13234316, at *3 (emphasis added), and this Court need go no further to resolve this motion.

## CONCLUSION

For the foregoing reasons, the Court should transfer this case to the U.S. District Court for the District of Columbia so that that court may determine whether it should be consolidated with *Association of Air Medical Services*.

Dated:  July 1, 2022

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ERIC B. BECKENHAUER
Assistant Branch Director

*/s/ Joel McElvain*
JOEL McELVAIN
Senior Trial Counsel
ANNA DEFFEBACH
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Phone: (202) 616-8298
Fax: (202) 616-8470
E-mail: joel.l.mcelvain@usdoj.gov
D.C. Bar No. 448431

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify on this 1st day of July, 2022, a true and correct copy of this document was served electronically by the Court's CM/ECF system to all counsel of record.

*/s/ Joel McElvain*
JOEL McELVAIN