**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF KENTUCKY**
**SOUTHERN DIVISION AT LONDON**

| | |
|---|---|
| PHI HEALTH, LLC, and EMPACT MIDWEST LLC, | **Case 6:22-cv-00095** |
| Plaintiffs, | |
| v. | |
| U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, | |
| XAVIER BECERRA, in his official capacity as Secretary of Health and Human Services, | |
| OFFICE OF PERSONNEL MANAGEMENT, | |
| KIRAN AHUJA, in her official capacity as Director of the U.S. Office of Personnel Management, | |
| U.S. DEPARTMENT OF LABOR, | |
| MARTIN J. WALSH, in his official capacity as Secretary of Labor, | |
| U.S. EMPLOYEE BENEFITS SECURITY ADMINISTRATION, | |
| ALI KHAWAR, in his official capacity as the Acting Assistance Secretary for the Employee Benefits Security Administration, | |
| U.S. DEPARTMENT OF THE TREASURY, | |
| JANET YELLEN, in her official capacity as Secretary of Treasury, | |
| INTERNAL REVENUE SERVICE, and | |
| CHARLES RETTIG, in his official capacity as Commissioner of Internal Revenue, | |
| Defendants. | |

**<u>PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER (ECF 21)</u>**
**<u>AND MOTION TO DEFER THEIR OBLIGATION TO RESPOND TO THE</u>**
**<u>COMPLAINT (ECF 22)</u>**

Defendants' motion to transfer should be denied because of the many differences between this case and *Ass'n of Air Med. Servs. v. United States Department of Health and Human Services, et al.*, No. 21-cv-3031-RJL (D.D.C.) ("*AAMS*"). There is *no* common plaintiff between this action and *AAMS*. Most of the legal and factual issues are different. And *AAMS* is not even the first-filed suit challenging most of the rules challenged by Plaintiffs here.  Because there is no "substantial overlap" between this matter and *AAMS*, this Court should not exercise its discretion to transfer this matter under the first-to-file rule. *Baatz v. Columbia Gas Transmission, LLC*, 814 F.3d 785, 789 (6th Cir. 2016).

Defendants' motion for a stay, of their deadline to file a responsive pleading, should also be denied. Defendants fail to carry their burden on *any* of the relevant elements that must be shown to justify a stay: potential hardship to Defendants, prejudice to Plaintiffs, and judicial economy. *Esperson v. Trugreen LP*, No. CIV. 10-2130-STA, 2010 WL 2640520, at *2 (W.D. Tenn. June 29, 2010). Delaying this case would prejudice Plaintiffs by requiring them to participate in arbitrations pursuant to Defendants' unlawful regulations. Requiring Defendants to file a responsive pleading does not implicate "judicial economy" in any way.  And the *only* supposed "hardship" to Defendants, identified in their motion, is the *potential* need to amend their answer, if this case were later transferred to the District of Columbia. That "hardship" is not entitled to any weight here, *especially* since Defendants have not identified any specific difference in the law that applies, to this Administrative Procedure Act challenge, between the Sixth Circuit and the D.C. Circuit.

2

I.      **Background**

A.      **This Action**

Congress enacted the No Surprises Act ("Act") on December 27, 2020, as part of the Consolidated Appropriations Act of 2021. Pub. L. 116-260, 134 Stat. 1182, div. BB, tit. I (2020). *See* Complaint, ECF 1 at ¶ 56 ("Compl."). Broadly speaking, the Act forbids medical providers from "balance billing" a patient for emergency medical services; instead, the Act provides for mandatory arbitration between the provider and the patient's health plan or health insurer. That mandatory arbitration process is called "Independent Dispute Resolution," or "IDR," and the arbitrator is referred to as an "IDR entity." The arbitration is "baseball style"—that is, each party submits a proposed dollar amount ("offer") and the IDR entity picks one.

Plaintiffs are medical providers in Kentucky who are subjected to the Act. Plaintiff EMpact, LLC provides professional emergency medical services at four hospitals located in this District. *Id.* at ¶ 9.  Plaintiff PHI Health, LLC is a limited liability company that provides air ambulance services and operates two airbases in the London Division of this District. *Id.* at ¶ 8.

On July 13, 2021, Defendant Departments published an Interim Final Rule ("IFR") implementing certain provisions of the Act, which Rule was entitled Requirements Related to Surprise Billing; Part I, 86 Fed. Reg. 36,872 (July 13, 2021) ("IFR Part I"). *Id.* at ¶ 63. IFR Part I took effect on September 13, 2021 and is applicable to plan and policy years beginning on or after January 1, 2022. *Id.* Among many other things, this IFR Part I described how to calculate the Qualifying Payment Amounts ("QPAs"), which are one among many factors to be considered by the arbitrator in the IDR process. The "QPA" is—roughly speaking—the median contracted rate, for the service at issue, which had been agreed to by the health plan or insurer in 2019.

On October 7, 2021, the Departments published a second Interim Final Rule entitled Requirements Related to Surprise Billing; Part II, 86 Fed. Reg. 55,980 (Oct. 7, 2021) ("IFR Part

II"). *Id.* at ¶ 64. IFR Part II took effect immediately—i.e., on October 7, 2021—and is, in general, similarly applicable to plan, policy, or contract years beginning January 1, 2022. *Id.* Among other things, this IFR Part II described the methods and process that the IDR entity would be required to follow in the IDR process. The rule also required the IDR entity to *presume* that the correct amount was the amount closest to the QPA—the so-called "QPA Presumption."

Neither IFR Part I nor IFR Part II were promulgated using notice-and-comment rulemaking. *See id.* at ¶ 62–82. The relevant statutory and regulatory provisions and their backgrounds are set forth in Plaintiffs' Complaint. *See id.* at ¶¶ 1–7, 46–268.

Plaintiffs filed this lawsuit on April 29, 2022, challenging the provisions of the IFR Part I and IFR Part II that are codified at 45 C.F.R. §§ 149.130, 149.140, 149.510, and 149.520. The regulatory provisions govern the calculation of the QPA, the information that the health plan or insurer must disclose to providers and the IDR entity about the QPA, the QPA Presumption, and other aspects of the IDR process. *See id*. at p. 54–69. Plaintiffs' challenge these regulatory provisions on three grounds: (1) they are arbitrary and capricious, and therefore must be set aside under the Administrative Procedure Act (APA); (2) they were promulgated without notice-and-comment, and for that reason must be set side under the APA; and (3) these provisions render the IDR process fundamentally unfair to Plaintiffs and therefore violate the Due Process and Takings clauses of the Fifth Amendment. *See id.* at p. 78.

## B. Other Actions

On October 28, 2021, the Texas Medical Association filed suit in the Eastern District of Texas, challenging one of the IFR Part II regulatory provisions, namely, the QPA Presumption. *See Texas Medical Ass'n and Dr. Adam Corley v. U.S. Dep't of Health and Human Servs., et al.*, No. 21-cv-425-JDK, ECF 1, at pp. 32-33 (E.D. Tex.) ("*TMA*"). The *TMA* Court has already issued

a judgment rejecting Defendants' arguments and vacating almost every regulatory provision that implements the QPA Presumption. *See TMA*, 2022 WL 542879 (Feb. 23, 2022 E.D. Tex.).

On November 16, 2021, the Association of Air Ambulances ("AAMS") filed a lawsuit in the District Court for the District of Columbia. This lawsuit challenged four regulatory provisions of the IFRs contained in 45 C.F.R. §§ 149.140(a)(7), 149.140(a)(1), 149.140(a)(12) and 149.510(c)(4)(ii)(A), which provisions relate to the calculation of the QPA and the QPA Presumption. *AAMS*, No. 21-cv-3031-RJL, ECF 1, p. 39–40 (D.D.C.). The *AAMS* Court has not issued any substantive rulings on the merits.

Neither of the Plaintiffs in this matter are parties to any of the above-mentioned cases, nor to any other challenge to the provisions of the IFRs. As described below, Plaintiffs' claims differ significantly from those advanced in *AAMS*.

## II.    This Court Should Deny the Motion to Transfer Because the First-to-File Rule Does Not Apply

The first-to-file rule is a prudential and discretionary doctrine. *Baatz*, 814 F.3d at 789, 793. The doctrine encourages judicial comity and minimizes duplicative suits, piecemeal litigation, and conflicting rulings. *Id.* "The rule is not strict, and it is within the discretion of the district court to decline to enforce it 'where equity so demands' . . . ." *Collier v. MedCare Inv. Corp.*, No. 3:18-CV-00331, 2018 WL 2364050, at *2 (M.D. Tenn. May 24, 2018) (quoting *Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Assocs., Inc.*, 16 F. App'x 433, 437 (6th Cir. 2001)); *see also Buff City Soap LLC v. Bynum*, No. 2:21-02462-JPM-CGC, 2022 WL 1285045, at *3 (W.D. Tenn. Apr. 29, 2022) ("The decision of whether to apply the first-to-file rule is within the discretion of the district court . . . ."). The Sixth Circuit has recognized a "paucity" of  appellate guidance regarding how district courts should apply the first-to-file rule. *Baatz*, 814 F.3d at 789.

When applying the doctrine, "courts generally evaluate three factors: (1) the chronology of events, (2) the similarity of the parties involved, and (3) the similarity of the issues or claims at stake." *Id*. Although neither the parties nor issues and claims must be identical between the two suits, they must substantially overlap. *Id*. at 790, 791. For issues and claims to substantially overlap, "they must 'be materially on all fours' and 'have such an identity that a determination in one action leaves little or nothing to be determined in the other.' *Id.* at 791 (quoting *Smith v. S.E.C.*, 129 F.3d 356, 361 (6th Cir. 1997)).

None of these factors counsel transferring Plaintiffs' suit to the District of Columbia, where the *AAMS* case is pending. **First**, the parties in *AAMS* and this case do not substantially overlap: They do not share a single plaintiff. Defendants urge the Court simply to ignore Plaintiff Empact Midwest LLC ("Empact") and to assimilate Plaintiff PHI Health, LLC ("PHI") to the Association of Air Medical Services because PHI is one of *300 other entities* that are members of that trade association. Defendants cite no case law that supports their effort to neuter the *substantial* overlap requirement. **Second**, the majority of claims raised in this action—including the challenges to the entirety of certain subsections and the constitutional challenges mounted against the regulations here—were not brought in *AAMS*. **Third**, even if the degree of overlap between this case and *AAMS* could satisfy the first two factors, the first-to-file rule would not justify transferring this case *to the District of Columbia*: Rather, it should instead be transferred to the Eastern District of Texas, where *TMA* was first-filed and already decided.

### A.    The parties in this case and *AAMS* do not substantially overlap.

The first-to-file rule requires that the parties to the two actions *substantially* overlap. *Baatz*, 814 F.3d at 790. The Sixth Circuit has described this element as requiring "nearly identical parties." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 551

(6th Cir. 2007) (quoting *Zide Sport Shop,* 16 Fed. App'x at 437); *see also Baatz*, 814 F.3d at 790 (citing and quoting same).

The parties in this case and *AAMS* cannot pass that test. ***This case and* AAMS *do not share a single plaintiff.*** PHI is not a party to *AAMS. AAMS*, ECF 1.[1] Empact is not a party to AAMS. *AAMS*, ECF 1. And AAMS—the plaintiff to *AAMS*—is not a party to this case. ECF 1. The only overlapping parties are the defendants.

Defendants try to get around this lack of overlap by first urging the Court to ignore one of two plaintiffs: Empact. Empact is *not* a member of AAMS and is not an air ambulance provider. Yet Defendants assert, without authority, "The presence of a co-plaintiff, Empact Midwest, LLC, in this action does not change the analysis." Br. at 10-11. According to Defendants, the Court should ignore the presence of additional parties that are not represented in an earlier-filed action because, otherwise, litigants could avoid the first-to-file rule by joining non-overlapping co-plaintiffs. ECF at 11. In other words, Defendants urge the Court to ignore Empact because, otherwise, Empact would defeat the substantial overlap requirement. That makes no sense. Defendants have not alleged that Empact is not a proper party to this action. And Defendants' approach would transform the "substantial overlap" requirement into a requirement of minimum overlap: a single shared plaintiff would trump all other differences.

Even if a single point of overlap were sufficient, *PHI is not* an overlapping party. *PHI is not a party to AAMS*. Defendants speculate that the parties must substantially overlap because AAMS is a trade association, and PHI is one of that association's 300 members. ECF at 10.

---

[1] Defendants repeatedly, and incorrectly, describe PHI as if PHI were litigating *AAMS. E.g.*, ECF at 11 ("In both actions, it [*i.e.*, PHI] challenges the rule governing the calculation of the qualifying payment amount . . . ."); *id.* ("In both actions, it contends that the Departments' rules unlawfully limit the amount that it can collect in cost-sharing . . . ."). Defendants lack any basis characterize PHI as a party to *AAMS*.

Defendants do not cite a single precedent in which a court found that a lawsuit brought by a plaintiff's trade association establishes substantial overlap between the parties for purposes of the first-to-file rule.

To the contrary, in *Tenneco Auto. Operating Co. v. Kingdom Auto Parts*, No. 08-CV-10467, 2009 WL 94541, at *2 (E.D. Mich. Jan. 13, 2009), the Court held that two actions did "not involve nearly identical parties" for purposes of the first-to-file rule. The Court reached that conclusion even though the plaintiff in *Tenneco* was a member of the Motor and Equipment Manufacturers Association (MEMA), a trade association that was the defendant in the second suit. *Id*. at *2-*3. The Court also refused to ignore the presence of additional parties that did not overlap. *Id*. at *3. Here, as in *Tenneco*, PHI's membership in the AAMS trade association is not enough to establish a substantial overlap in parties—especially since Empact is neither a member of AAMS nor even an air ambulance provider.

Defendants' attempt to equate trade associations with their members, for purposes of the first-to-file rule, would dramatically expand the scope of that rule. Under Defendants' logic, a lawsuit brought by the U.S. Chamber of Commerce would effectively bar any of the Chamber's members from litigating similar claims in any other federal court. A lawsuit by the National Association of Realtors would require all of its 1.56 million members[2] to litigate in the same federal court where the NAR filed—or, conversely, if a member filed first, then presumably the NAR would be bound to file and litigate wherever that member chose to file. And the American Petroleum Institute's litigation activities could require relocation of cases by any of its 600 member businesses. American Petroleum Institute, Membership (last accessed July 10, 2022),

[2] National Association of Realtors, Historic Report (last accessed July 10, 2022), https://www.nar.realtor/membership/historic-report.

8

https://www.api.org/membership. But Defendants have made no showing that all members of such broad-based associations would have similar interests. Nor have Defendants explained why members suing based on direct harm to their businesses should play second fiddle to a trade association purporting to litigate in a representative capacity.

Defendants are correct that PHI is a member of AAMS. But Defendants have not alleged that AAMS, a broad-based trade association with 300 members, acts as PHI's agent. *See AAMS*, ECF 1 at ¶ 20. AAMS is a distinct legal person, able to sue in its own name. *See Online Merchants Guild v. Cameron*, 995 F.3d 540, 547 (6th Cir. 2021) ("To establish direct standing to sue in its own right, an organizational plaintiff like the Guild must demonstrate that the 'purportedly illegal action increases the resources the group must devote to programs independent of its suit challenging the action.'" (citations omitted)); *id*. 995 F.3d at 549 (discussing trade association's alternate ability to bring case on behalf of its members based on representative (*i.e.*, associational) standing). Furthermore, some of AAMS litigating positions cannot further the interests of all of its members; for example, AAMS's challenge to lumping together hospital-based and independent air ambulance providers when calculating the QPA will—if successful—deflate the QPA for whichever constituency contracts at lower rates. *See AAMS*, ECF 1 at ¶ 20 (noting membership includes both types of providers).

Defendants cite *Baatz* for the proposition that parties need not be perfectly identical. ECF 21 at 11. Defendants, however, must still show that the parties *substantially overlap*. *Baatz*, 814 F.3d at 790. *Baatz* concerned the very different context of class actions in which the court may compare proposed classes (rather parties) to determine whether the overlap between those proposed classes is sufficient to justify the first-to-file rule. *Id*. at 790–91. The court explained the "fairly straightforward" reason for the "substantial overlap" approach in the unique context of class

actions: "if the opposite rule were adopted, the first-to-file rule might never apply to overlapping class actions as long as they were filed by different [named] plaintiffs," which would be particularly problematic given the resource-intensiveness of class-action litigation. *Id.* at 791. Moreover, although the plaintiffs in *Baatz* were not yet part of the first-filed lawsuit, they would be part of the class (and thus subject to the first-to-file rule) once the first-filed class was certified. *Id*.

This case is far different from *Baatz.* Neither this case nor *AAMS* is a class action. Nor have Defendants even suggested that PHI or Empact will ever be joined as parties to *AAMS*, or that AAMS will ever be joined as a party to this action.

Because the plaintiff in *AAMS* is not a party to this case, and because neither PHI nor Empact are parties to the *AAMS* case, the parties do not "substantially overlap." The Court should deny Defendants' motion on this basis alone.

**B.      The claims and issues here are not "truly duplicative" of the claims and issues in *AAMS***

The first-to-file rule does not apply if the first-filed suit "is not truly duplicative of the suit before it." *Smith v. S.E.C.*, 129 F.3d 356, 361 (6th Cir. 1997). "[T]he one must be materially on all fours with the other. . . . [T]he issues must have such an identity that a determination in one action leaves little or nothing to be determined in the other." *Id.* (internal citations and quotation marks omitted).

Defendants concede, as they must, that this case is different from *AAMS* in many ways. This case, Defendants admit, "includes additional statutory, procedural, and constitutional claims that were not (but could have been) presented in the [*AAMS*] action, including claims that the July 2021 and October 2021 rules violate the Takings Clause and the Due Process clause of the Fifth Amendment." ECF 21 at 7–8. This laundry list of differences resolves the matter: this case and

*AAMS* raise different claims, ground their challenges in different substantive bodies of law, and thus are not in any sense "materially on all fours." *Smith*, 129 F.3d at 361.

As the following chart reflects, the *majority* of the claims in this suit are not present in *AAMS*:

| Claims in PHI Health LLC and Empact Midwest LLC v. HHS et al, 22-cv-95 (E.D.K.Y.) | Claims in Ass'n of Air Medical Services v. HHS et al, 21-cv-3031 (D.D.C.) |
|---|---|
| **Count I: 45 C.F.R. §§ 149.130, 149.140, 149.510, and 149.520 should be set aside because the agencies failed to follow notice and comment procedures (5 U.S.C. § 553, 706)** | **Not present** |
| Count II: The QPA presumption violates the No Surprises Act and is arbitrary and capricious (5 U.S.C. § 706) | Count I: The QPA presumption violates the No Surprises Act and is arbitrary and capricious (5 U.S.C. § 706) |
| **Count III: The Regulation Prescribing What Information the Payor Must Provide About the QPA (45 C.F.R. § 149.140(d)(2)) Should Be Set Aside, Under the APA, Because It Is Arbitrary, Capricious, Contrary to Law, In Excess of Statutory Limits, and Contrary to the Statute (5 U.S.C. § 706)** | **Not present** |
| **Count IV: The Regulation Governing Which Entity's Rates Are Included, in the QPA Calculation (45 C.F.R. § 149.140(b)(1)) Should Be Set Aside, Under the APA, Because It Is Arbitrary, Capricious, Contrary to Law, In Excess of Statutory Limits, and Contrary to the Statute (5 U.S.C. § 706)** | **Not present** |
| Count V: The Regulation Prescribing the Geographic Regions Used to Determine the QPA (45 C.F.R. § 149.140(a)(7)) Should Be Set Aside, Under the APA, Because It Is Arbitrary, Capricious, Contrary to Law, In Excess of Statutory Limits, and Contrary to the Statute (5 U.S.C. § 706) | Count II: The regulations governing the relevant geographic regions for purposes of calculating the QPA are arbitrary and capricious and violates the No Surprises Act (5 U.S.C. § 706) |
| Count VI: The Regulation that Excludes Case-Specific Agreements from the QPA Calculation (45 C.F.R. § 149.140(a)(1)) Should Be Set Aside, Under the APA, Because It Is Arbitrary, Capricious, Contrary to Law, In Excess of Statutory Limits, and Contrary to the Statute (5 U.S.C. § 706) | Count II: Excluding single case agreements from the calculation of the QPA is arbitrary and capricious and violates the No Surprises Act (5 U.S.C. § 706) |
| Count VII: The Regulation That Includes Hospital Contracted Rates in Air Ambulance QPAs (45 C.F.R. § | Count II: Including hospital-based air ambulance providers in |

| 149.140(a)(12)) Should Be Set Aside, Under the APA, Because It Is Arbitrary, Capricious, Contrary to Law, In Excess of Statutory Limits, and Contrary to the Statute (5 U.S.C. § 706) | the QPA calculation violates the No Surprises Act and is arbitrary and capricious (5 U.S.C. § 706) |
|---|---|
| **Count VIII: The Implementing Regulation Defining the Patient's "Cost Sharing" For Air Ambulance Services (45 C.F.R. § 149.130) Should Be Set Aside Under the APA Because It Is Arbitrary, Capricious, Contrary to Law, In Excess of Statutory Limits, and Contrary to the Statute (5 U.S.C. § 706) (Asserted by PHI)** | **Not present[3]** |
| **Count IX: The Implementing Regulations Violate the U.S. Constitution Because They Take PHI's Property and Services Without Just Compensation (5th Amendment, Takings Clause) (Asserted by PHI)** | **Not Present** |
| **Count X: The No Surprises Act, and Its Implementing Regulations, Violate Due Process Because the IDR Process Is Fundamentally Unfair And Does Not Permit Providers to Challenge Confiscatory Rates (5th Amendment, Due Process) (Asserted by PHI)** | **Not Present** |

Thus, unlike the instant suit, *AAMS* challenges a narrower set of provisions and mounts no constitutional challenge to any of them. *See AAMS*, ECF 1 at pp. 39–40 (prayer for relief seeking only vacatur and declaratory relief with respect to certain provisions of IFRs Parts I and II).

Therefore, even complete victory by the *AAMS* plaintiff would not resolve PHI and Empact's claims, much less leave "little or nothing to be determined." *Smith*, 129 F.3d at 361. This is *not* a case in which the earlier suit has "the potential to completely resolve the [later plaintiffs'] claims." *Baatz,* 814 F.3d at 790; *see also Cheslek v. Encore Cap. Grp., Inc.,* No. 1:16-CV-1183,

---

[3] Defendants' motion cites AAMS's summary judgment briefing for the proposition that *AAMS* challenges "the July 2021 rule" on the grounds that it "unlawfully limited patient's cost-sharing responsibilities by reference to the qualifying payment amount." ECF 21 at 6 (citing *AAMS*, ECF 5 at 31). However, the complaint—the relevant document for a first-to-file analysis—contains no such challenge. *See AAMS,* ECF 1 at 34–35 (prayer for relief). Indeed, the conclusion to the cited section of the summary judgment brief frames AAMS's arguments about cost-sharing solely in terms of their challenge to the QPA, noting that "[t]he Departments' use of this flawed premise as a justification to intentionally deflate the QPA to further reduce patient cost-sharing underscores *the arbitrary and capricious nature of their QPA methodology*." *AAMS*, ECF 5 at 33 (emphasis added). The cost-sharing regulations are thus not directly challenged in *AAMS*.

2017 WL 7362749, at *1 (W.D. Mich. Feb. 3, 2017) (finding that "prevailing questions alone provide a viable basis to reject transfer under the first-to-file rule" where conclusion of the first case "independent of the other, would leave separate issues still requiring resolution . . .").

The following provisions at issue in this case would still require independent adjudication, even *after* a victory for *AAMS*: 45 C.F.R. § 149.140(d)(2), which governs information that payors must share with providers (Count III of this suit), 45 C.F.R. § 149.140(b)(1), which permits plan's administrator's rates to be included in the plan's QPA calculation (Count IV); and 45 C.F.R. § 149.130, which fixes the patients' cost-sharing amount (Count VIII). These provisions have their own unique drafting history, purported statutory justification, and administrative law complications requiring separate adjudication and preventing any application of the first-to-file rule. *See Riley v. Gen. Motors, LLC*, No. 2:21-CV-00924, 2022 WL 787871, at *5 (S.D. Ohio Mar. 15, 2022) (rejecting application of the first-to-file rule where "if the first case [was] litigated to completion and Plaintiffs there secured a favorable judgment against Defendant, this Court would still need to resolve the state law and federal claims of the plaintiffs here.").

Of particular significance, this suit mounts two unique and broad-based challenges to the rules absent from *AAMS*. First, in Count I, Plaintiffs challenge 45 C.F.R. §§ 149.130, 149.140, 149.510, and 149.520 on the ground that the agencies failed to comply with notice and comment rulemaking requirements when promulgating the IFRs. Second, in Counts IX and X, Plaintiffs challenge the rules on the grounds that the IFRs take the Plaintiffs' property without just compensation and without due process, in violation of the Fifth Amendment. In contrast, *AAMS* does not make a challenge to the regulations as a whole and does not make a constitutional challenge. *See AAMS*, ECF 1 at 39–40 (prayer for relief seeking only vacatur and declaratory relief with respect to certain provisions of IFRs Parts I and II). The claims at issue in the two cases are

thus not "materially on all fours" and do not "have such an identity that a determination in one action leaves little or nothing to be determined in the other" as required to justify the application of the first-to-file rule. *Baatz*, 814 F.3d at 791.

A similar argument applies to Defendants' repeated statements that a replacement rule will be "forthcoming." ECF 21 at 5. As Defendants admit, this rule would only "supersede the vacated portions of 45 C.F.R. § 149.510, as well as portions of the separate regulation under 45 C.F.R. § 149.520 involving the arbitration of air ambulance payment disputes." *Id.* Assuming *arguendo* that these new rules resolved the challenges to those specific provisions brought in this suit and *AAMS*, the end result would be even *less* overlap between the claims in this case and the claims in *AAMS*. The claimed imminence of the revised rules thus provides another reason why *AAMS* and this matter are not "materially on all fours." *Baatz*, 814 F.3d at 791.

### C.      Even if the first-to-file rule applied, AAMS is not the first filed case.

The Court should *not* apply the first-to-file rule because neither the parties nor claims in this case substantially overlap with those in the *AAMS* case. But even if the Court were to apply the first-to-file rule, the result should *not* be a transfer to D.C. (where *AAMS* is pending), but rather to the Eastern District of Texas, where the true first-filed case has *already been decided* and has vacated the QPA Presumption.

The chronology-of-events factor considers which action was filed first. *Baatz*, 814 F.3d at 790. Several weeks before AAMS challenged the QPA Presumption in the *AAMS* complaint (filed November 16, 2021), the Texas Medical Association filed suit on October 28, 2021. *See TMA*, at ECF 1 (E.D. Tex. Oct. 28, 2021) (complaint). In *TMA*, the Court considered a challenge to the QPA Presumption, very similar to the challenge brought here and in *AAMS*. *See generally TMA*, 2022 WL 542879. And whereas the District of the District of Columbia has yet to rule on *AAMS*, the Eastern District of Texas has already resolved the QPA challenges in *TMA*. *Id*. at *15. Thus,

14

*TMA*—not AAMS—was the first case in which a plaintiff challenged the legality of the interim final rules under the APA—specifically the Departments' decision to dispense with notice-and-comment rulemaking and the conflict between the QPA Presumption and the statutory text—and *TMA* is so far the only case to have decided the merits of the challenge.

The first-to-file rule aims to "conserv[e] judicial resources by minimizing duplicative or piecemeal litigation, and protect[] the parties and the courts from the possibility of conflicting results." *Baatz*, 814 F.3d at 789. In light of the Eastern District of Texas' substantial familiarity with the Act,[4] transferring this case to the District of Columbia rather than the Eastern District of Texas would not further the purposes of the rule. While the Plaintiffs oppose any transfer under the first-to-file rule, if the Court is inclined to transfer the case anywhere, the Eastern District of Texas would be far more appropriate than the District of Columbia.

### D.   *National Health Federation v. Weinberger* **is not analogous or persuasive.**

Defendants rely on *National Health Federation v. Weinberger*, 518 F.2d 711 (7th Cir. 1975)—the only case described in detail in their brief—to justify application of the first-to-file rule to the present case. ECF 21 at 12. This 47-year-old decision from another circuit is inapposite. First, *National Health Federation* applied a different test to assess transfer than the one current in the Sixth Circuit: "the court may dismiss a declaratory or injunctive suit if the same issue is pending in litigation elsewhere." *Id*. at 712. That version of the rule (unlike the operative test currently in use in the Sixth Circuit) did not require the overlap of parties at all.[5] Second, in *National Health Federation*, "the issues raised in both complaints [were] identical." *Id.* at 713.

---

[4] In addition to *TMA*, the Eastern District of Texas is currently hearing a challenge to the QPA Presumption as it concerns air ambulance providers, an issue squarely presented by PHI's suit. *Lifenet, Inc. v. U.S. Dep't of Health and Human Servs.* (Apr. 27, 2022), ECF 1 (complaint).

[5] The Court in *National Health Federation* acknowledged that "dismissal of the equitable relief sought here has generally occurred where the parties in the other pending action were the same as the parties in the dismissed action," but it did not require application of that factor. *Id*. at 713.

Here, as discussed above at pages 10–14, more than half of the claims asserted in this case are not at issue in AAMS. Third, in *National Health Federation*," the Court worried that "the filing of the complaint here smacks of gamesmanship": the plaintiffs sought a new forum after the Southern District of New York and Second Circuit had already ruled against their claims on the merits of the first suit. *Id*. at 714; *see also id*. at 713 n.2. In contrast, the District of the District of Columbia has not ruled on the merits of AAMS' challenge. There is no "gamesmanship."

Unable to identify any gamesmanship on the part of PHI and Empact, Defendants instead suggest it would somehow be unfair to allow this suit to proceed because the Plaintiffs might benefit from *res judicata* if AAMS wins its case. But Defendants themselves acknowledge that "the first-to-file rule does not require analysis of the potential *res judicata* effect of an earlier suit on a later one." ECF 21 at 13. That makes sense. The *res judicata* effect of AAMS on PHI's suit would be the same regardless of whether this case is pending in Kentucky or DC. And, in either suit, it would be of little relevance. First, AAMS has sought *vacatur* of the rules challenged in that case, which is the typical remedy in APA challenges and would have nationwide effect. *E.g.*, *AAMS*, ECF 5 (requiring order "vacating the challenged portions of the interim final rules"); *Texas Med. Ass'n*, 2022 WL 542879, at *14 (vacating portions of the interim final rules and rejecting defendants' request to limit vacatur to the identified plaintiffs); 5 U.S.C. § 706(2) (requiring courts to "hold unlawful and set aside agency action" found to violate the APA). Second, a ruling in AAMS setting aside the rules challenged in that case would still leave the majority of the claims to resolve in this case—because they are not at issue in AAMS. *See supra* at 10–14. Finally, it is unlikely that *res judicata* principles would apply, in this situation, against the sovereign. *See United States v. Mendoza*, 464 U.S. 154, 158 (1984) (a *different* party may not invoke "nonmutual" collateral estoppel against the United States). Defendants have not shown that *res judicata* would

16

bind PHI in the unlikely event AAMS's challenge does not succeed.[6] And Defendants have not

even tried to argue that Empact—which is not a member of AAMS—could be estopped.

## III.    The Court Should Not Stay Defendants' Obligation to Respond to the Complaint

Under Rule 12(a)(2), Defendants must answer within 60 days after service on the United

States attorney. Rule 12 itself specifies that certain motions will toll the time to answer; and, a

motion to transfer under the first-to-file rule is not one of them. Fed. R. Civ. P. 12(a)(4), (b). Other

motions—even dispositive ones—generally do not extend a defendant's time to answer or

otherwise stay a case. *Cf. Peterson Motorcars, LLC v. BMW of N. Am., LLC*, No.

319CV00277DJHRSE, 2019 WL 8989835, at *3 (W.D. Ky. Nov. 1, 2019) ("Generally, the mere

filing of a dispositive motion . . . is insufficient to support a stay of discovery. . . . Had the Federal

Rules contemplated that a motion to dismiss under Fed. R. Civ. P. 12(b)(6) would stay discovery,

the Rules would contain a provision to that effect."); *Sparks v. Fifth Third Mortg. Co.*, No. 5:17-

CV-450-CHB-REW, 2018 WL 2250920, at *1 (E.D. Ky. May 3, 2018) (same).

"When considering a motion to stay, the district court should consider three factors: (1)

potential prejudice to the non-moving party; (2) hardship and inequality to the moving party if the

action is not stayed; and (3) the judicial resources that would be saved by the stay." *Esperson v.*

---

[6] Defendants cite only *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 322 F.3d 1064, 1083-84 (9th Cir. 2003), in support of their theory that a judgment in *AAMS* "could *potentially* bind" PHI. ECF 21 at 13. A membership organizations' prior suit does not operate as a *per se* bar to suits by members. *E.g., Cigar Ass'n of Am. v. U.S. Food & Drug Admin.*, 436 F. Supp. 3d 70, 82 (D.D.C. 2020). Indeed, in *Tahoe-Sierra*, the *Ninth Circuit* held that to find privity between an organization and its members for purposes of estoppel, "the organization must adequately represent the interests of its individual members." 322 F.3d at 1082. The court stressed that the organization at issue in *Tahoe-Sierra* had "vigorously" defended its members interests "through at least 18 years of litigation on this matter alone," there was "no suggestion of any conflict between the Association and any of its members" and none of the plaintiffs "alleged that he was in a legal position different from either the Association or" other individually named plaintiffs and association members who had participated in the prior case. *Id*. at 1083. Even if the rule in *Tahoe-Sierra* were to apply in the Sixth Circuit, Defendants have not made a factual showing that AAMS has represented PHI in *AAMS* to a similar degree.

*Trugreen LP*, No. CIV. 10-2130-STA, 2010 WL 2640520, at *2 (W.D. Tenn. June 29, 2010). "[A] stay is not a matter of right," and "the party requesting a stay bears the burden of showing that the circumstances justify an exercise of [the court's] discretion" to grant the stay. *Id*. (quoting *Indiana State Police Pension Tr. v. Chrysler LLC*, 556 U.S. 960, 961 (2009)).

Delaying this case would substantially prejudice Plaintiffs. PHI and Empact challenge regulations that define the scope and determine the outcomes of ongoing arbitrations (IDR processes) that result in binding determinations of the amount of money owed to Plaintiffs for their emergency services. Those arbitrations (or "IDRs") determine the rates at which Plaintiffs are paid for their medical services. 45 C.F.R. § 149.510(c)(4)(vii)(A) (determination of certified IDR entity is "binding upon the parties, in the absence of fraud or evidence of intentional misrepresentation of material facts"). Those arbitrations result in final awards within just 30 business days of the arbitrator's appointment. 45 C.F.R. § 149.510(c)(4)(ii). And the regulations only purport to permit those awards to be challenged under the narrow exceptions allowed by the Federal Arbitration Act. *See* 45 C.F.R. § 149.510(c)(4)(vii)(A). As long as the Departments' illegal regulations remain in place, Plaintiffs will be forced to participate in the unlawful arbitration process, and Plaintiffs will continue receiving flawed arbitration awards.

The sole reason that Defendants cite for delaying their answer is that it would "afford[] the Defendants the opportunity to prepare a response that accounts for D.C. Circuit or Sixth Circuit case law, as appropriate." ECF 22 ¶ 4. Not only does Defendants' motion to transfer lack merit for the reasons discussed above, obviating the risk of a change in law; but Defendants also have not identified any relevant differences between the law of the D.C. and Sixth Circuits—let alone any portions of their answer that would change. Furthermore, should the Court grant Defendants

motion to transfer and such differences emerge, on a proper showing Defendants could move to amend their answer under Rules 15(a) or Rule 16(b)(4), as appropriate.

Granting the requested stay would not conserve any judicial resources. Defendants ask only for a delay in *their* obligation to answer Plaintiffs' complaint. Answering a complaint does not require any judicial involvement whatsoever. Thus, none of the three factors counsel in favor of granting the stay requested by Defendants. *Cf. Esperson*, 2010 WL 2640520, at *4 (denying stay where judicial resources would not be conserved and stay would not burden either party).

Defendants do not cite *any* Sixth Circuit authority granting or approving of a stay under similar circumstances. *See* ECF 22 ¶ 3. In *In re Apple Inc.*, 979 F.3d 1332, 1337-38 (Fed. Cir. 2020), cited by Defendants, the Federal Circuit applied *Fifth Circuit* law to resolve Apple's challenge to the denial of its motion to transfer. Moreover, the Federal Circuit did not hold that a court should stay a party's answer pending resolution of a transfer motion. Defendants misconstrue the Federal Circuit's statement that "disposition of [a transfer motion] should have taken a top priority." *Id*. at 1343.  In that passage, the Federal Circuit was criticizing the district court for *investing judicial resources* after Apple moved to transfer the case and then for denying transfer, in part, based on that subsequent investment of resources by the court. *Id*.; *see also id.* at 1337-38. Nothing of the sort is happening here.

Defendants' second case, *In re Horseshoe Entertainment*, 337 F.3d 429 (5th Cir. 2003) likewise applied Fifth Circuit law and challenged the merits of a district court's denial of a motion to transfer. The Fifth Circuit did state that disposition of the motion to transfer "should have taken a top priority," but the Fifth Circuit made that statement in the context of criticizing the trial court for taking 13 months to decide the motion. *Id*. at 433. The Court did not discuss *at all* whether the Court should have stayed the defendants' answer or paused other proceedings. *Id*. at 433.

In *B.E. Tech., LLC v. Spark Networks, Inc.*, No. 2:12-cv-02832JPMCGC, 2013 WL 12049108 (W.D. Tenn. Feb. 14, 2013), the Western District of Tennessee did stay proceedings pending resolution of a transfer motion. But that ruling did not concern the defendant's answer, which the defendant had already served two months earlier. *Id*. at *1. The court stayed other proceedings "in light of judicial economy and comity," factors that may apply to actions taken by a court but not to an answer filed by an individual litigant. *Id*. Thus, none of the cases cited by Defendants justifies the stay they seek.

## IV.  Conclusion

For the reasons stated above, Plaintiffs respectfully ask the Court to deny each of Defendants' motions. Defendants cannot satisfy the first-to-file rule vis-à-vis the D.C. *AAMS* action because i) none of the plaintiffs overlap with those in this case, ii) the majority of the claims and issues are distinct, and iii) even if the first two factors were not fatal (and they are), any transfer made under the rule should send this case to the Eastern District of Texas, which has already decided the first-filed *TMA* action. Defendants have not shown any basis to stay their obligation to answer while their motion to transfer is pending.


Dated: July 20, 2022

                                        Respectfully submitted,

                                        */s/ Chrisandrea Turner*
                                        Chrisandrea Turner
                                        STITES & HARBISON, PLLC
                                        250 W. Main St., Ste. 2300
                                        Lexington, KY 40507
                                        859-226-2261
                                        clturner@stites.com
                                        *Counsel to Plaintiffs*

                                        Stephen Shackelford, Jr.
                                        Steven Shepard

SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Tel: (212) 336-8330
Email: sshepard@susmangodfrey.com
Email: sshackelford@susmangodfrey.com

***Attorneys for Plaintiffs***

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify on this 20th day of July, 2022, a true and correct copy of this document

was served electronically by the Court's CM/ECF system to all counsel of record.


<u>*/s/ Steven M. Shepard*</u>
Steven M. Shepard