**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY**

|  |  |
|---|---|
| PHI HEALTH, LLC, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*, <br><br> Defendants. | No. 6:22-cv-00095-REW-EBA |

## DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO TRANSFER

### INTRODUCTION

PHI Health, LLC, is an air ambulance operator that has engaged in the practice of "surprise billing" to require its patients to pay outstanding balances, which can run in the tens of thousands of dollars, for out-of-network medical services. Because Congress was concerned that this practice had subjected patients to excessive financial liabilities, it enacted the No Surprises Act, which prohibits surprise billing by health care providers, including providers of air ambulance services, in certain circumstances. Defendants here are the federal agencies with the responsibility for issuing regulations to implement the Act, and they fulfilled that responsibility by issuing two rulemakings in July and October of 2021.

PHI Health was dissatisfied with those rulemakings, and accordingly it—acting through its trade association, the Association of Air Medical Services ("AAMS")—brought suit in the District of Columbia district court to challenge both rulemakings on multiple grounds. Summary judgment motions in that case have been fully briefed, and the district court heard argument in March 2022.

1

After that argument, PHI Health decided to hedge its bets.  It filed a second action, raising the same challenges to both rulemakings, in this Court.  This duplicative action should be transferred to the District of Columbia under the first-to-file rule to prevent the unnecessary expenditure of judicial resources and to avoid the possibility of inconsistent judgments.

Plaintiffs dispute whether the first-to-file rule applies here, but they ignore that it is not this Court's role to decide whether transfer is warranted.  As the court hearing the second-filed action, this Court's role is limited to determining that there *might* be a substantial overlap between the two actions, and upon so finding, transferring the action to the first-filed court for that body to make the ultimate decision whether transfer is warranted.  There is, at the very least, a possibility that the issues could overlap between this case and the District of Columbia action, and accordingly this Court should transfer the case to the court hearing the earlier action.

In any event, even if this Court were to address the first-to-file rule on its own, it should apply the rule to transfer this action to the District of Columbia.  Each of the relevant factors counsels in favor of transfer.  The chronology of events demonstrates that the District of Columbia suit is the first-filed action.  There is a substantial overlap between the plaintiffs in the two actions, given that PHI Health holds a seat on AAMS's board of directors, PHI Health has actively participated in conducting the District of Columbia litigation, and AAMS expressly represented to the District of Columbia court that it had brought suit on PHI Health's behalf.  There is also a substantial overlap of issues in the two actions, given that PHI Health is pursuing identical challenges to the two rulemakings in both courts.  Finally, there are no equitable considerations that would give this Court cause to stay its hand.  As a matter of comity with a sister federal district court, then, this Court should transfer this action to the District of Columbia to allow that court to decide whether to accept the transfer under the first-to-file rule.

2

**ARGUMENT**

I.    **This Case Should Be Transferred So That the District of Columbia District Court May Apply the First-to-File Rule in the First Instance.**

PHI Health filed suit in this Court in April 2022, five months after it—acting through its trade association, AAMS—filed a complaint in the District of Columbia that raised the same challenges to the same rulemakings under the No Surprises Act.  Under these circumstances, this Court plays only a limited role.  The first-to-file rule is a principle of "comity among federal courts of equal rank."  *Baatz v. Columbia Gas Transmission, LLC*, 814 F.3d 785, 789 (6th Cir. 2016).  That principle of comity requires that "it is the first-filed court that should apply the first-filed rule."  *Delta T Corp. v. Ritchie Eng'g Co*., No. CV 5:11-208, 2011 WL 13234316, at *3 (E.D. Ky. Nov. 18, 2011); *see also Save Power Ltd. v. Syntek Fin. Corp*., 121 F.3d 947, 950 (5th Cir. 1997).  Accordingly, as this Court is the second-filed court, its role is limited to finding "that the issues *might* substantially overlap," and upon so finding, "the proper course of action [is] for the court to transfer the case to the first-filed court to determine which case should, in the interests of sound judicial administration and judicial economy, proceed."  *Delta T Corp.*, 2011 WL 13234316, at *3 (emphasis added) (quoting *Cadle Co. v. Whataburger of Alice, Inc*., 174 F.3d 599, 606 (5th Cir. 1999)).

Defendants explained in their opening memorandum that, at a minimum, the issues might substantially overlap between this action and the District of Columbia action.  *See* Defs.' Mot. to Transfer 2, 9, 13, ECF No. 21.  It is thus for the District of Columbia court, not this Court, to make the ultimate determination whether this case should be transferred under the first-to-file rule.  Plaintiffs did not offer any response to this point in their opposing memorandum, and they have therefore waived any opposition to transfer on this ground.  *See Modern Holdings, LLC v. Corning, Inc.*, No. 13-cv-00405-GFV-TEBA, 2022 WL 710174, at *11 (E.D. Ky. Mar. 9, 2022),

*reconsideration denied*, 2022 WL 2760751 (E.D. Ky. July 14, 2022). This Court need proceed no further to grant the transfer motion.

## II.     Each of the Relevant Factors Weighs in Favor of Transfer under the First-to-File Rule.

Even if this Court were to consider the transfer motion in the first instance, however, it should conclude that transfer is warranted under the first-to-file rule. Courts in the Sixth Circuit evaluate three factors in considering whether to apply this rule: "(1) the chronology of events, (2) the similarity of the parties involved, and (3) the similarity of the issues or claims at stake." *Baatz*, 814 F.3d at 789. In addition, "[i]f these three factors support application of the rule," courts should also consider whether "any equitable considerations" merit not applying the first-to-file rule. *Id.* Each of these factors weighs in favor of transfer of this action to the District of Columbia.

### A.     The Parties Are Similar.

As an initial matter, the similarity of the parties involved weighs in favor of transfer. Both actions involve the same set of Defendants. And the lead Plaintiff here, PHI Health, has actively participated in the District of Columbia action through its trade association, AAMS. PHI Health protests that it is merely "one of *300 other entities* that are members of that trade association," Pls.' Opp'n to Defs.' Mot. to Transfer 6, ECF No. 25 ("Opp'n") (emphasis in original), but this understates its involvement both in the Association and in the first-filed litigation. PHI Health is not merely a passive bystander to its trade association's suit. It holds a seat on the Association's board of directors, and, in that capacity, it presumably has participated in the Association's decision making regarding the conduct of the District of Columbia litigation. *See* AAMS Board of Directors, aams.org/page/board-of-directors. And AAMS expressly represented in the District of Columbia action that it had brought suit there on PHI Health's behalf. *See* Compl. ¶ 20, ECF No. 1, *Ass'n of Air Ambulance Servs. v. U.S. Dep't of Health & Human Servs.*, No. 1:21-cv-03031-

4

RJL (D.D.C. filed Nov. 16, 2021) (Association filed suit "on behalf of its members"); *see also id.*
¶ 121 (asserting associational standing on the basis of an alleged injury to PHI Health); *id.* Ex. 5,
ECF No. 1-5 (declaration of PHI Health officer alleging injury).

Given that PHI Health is actively prosecuting its challenges to the Departments'
rulemakings in both courts, the "similarity of the parties" factor is easily satisfied.  Plaintiffs note
that PHI Health is not formally a plaintiff in the District of Columbia action, and they express
doubt that there could ever be a substantial overlap between a trade association and its membership
for purposes of the first-to-file rule.  Opp'n 8.  But "[i]dentity of parties is not a mere matter of
form, but of substance," *First Mortg. Corp. v. United States*, 961 F.3d 1331, 1341 (Fed. Cir. 2020)
(internal quotation omitted), and in substance the Association is representing PHI Health's
interests—with its participation and approval—in the first-filed action.   Under similar
circumstances, courts have recognized that an association and its membership are sufficiently
aligned for the first-to-file rule to apply.  *See En Fuego Tobacco Shop LLC v. FDA*, No. 4:18-CV-
00028, 2018 WL 10126071, at *2 (E.D. Tex. July 2, 2018), *aff'd*, 2018 WL 11247716 (E.D. Tex.
July 30, 2018); *Swisher Int'l, Inc. v. FDA*, No. 3:21-CV-764-BJD-JBT, 2021 WL 4173841, at *7
(M.D. Fla. Sept. 7, 2021), *aff'd*, No. 21-13088, 2022 WL 320889 (11th Cir. Feb. 3, 2022).[1]

It makes perfect sense to treat PHI Health and its trade association as overlapping parties,
given that a decision in the Association's lawsuit could preclude PHI Health's attempt to bring a
second challenge to the same rulemakings.  A member's "close relationship" with its association

---

[1] Context matters, and in some cases an association and its members may be sufficiently dissimilar
such that the first-to-file rule should not apply.  In the *Tenneco* case cited by Plaintiffs, for example,
Opp'n 8, the rule was invoked solely on the basis of the company's membership in the trade
association, but no allegation was made that the company had actively participated in or had
directed the association's lawsuit.  *See Tenneco Auto. Operating Co. v. Kingdom Auto Parts*, No.
08-CV-10467, 2009 WL 94541, at *3 (E.D. Mich. Jan. 13, 2009).  In this case, in contrast, PHI
Health is an active participant in the District of Columbia litigation.

may suffice to bind the member to an adverse decision in the association's lawsuit, at least in cases where the member "clearly hitched [its] fortunes" to the association's prosecution of that action. *Tahoe-Sierra Pres. Council v. Tahoe Reg'l Plan. Agency*, 322 F.3d 1064, 1082 (9th Cir. 2003); *see also Cigar Ass'n of Am. v. FDA*, 436 F. Supp. 3d 70, 82 (D.D.C. 2020) ("a member who 'actively participates' in the association's litigation" may be precluded by an adverse decision). Plaintiffs object that there is no "per se" rule that would require a finding of privity between an association and its members, Opp'n 17 n.6, but this is beside the point.  PHI Health has directly played a role in the Association's lawsuit, and thus res judicata could preclude its second bite at the apple in this lawsuit.  This Court need not hold now that claim or issue preclusion in fact does apply in this case; it is enough for the present purposes to note the serious possibility that res judicata could foreclose PHI Health's suit in the absence of a transfer.  For this reason, there is a substantial overlap between PHI Health and its trade association.

The presence of a co-plaintiff, Empact Midwest LLC, does not counsel against a transfer. The first-to-file rule requires only that the parties "substantially overlap," not that they be "perfectly identical."  *Baatz*, 814 F.3d at 790, 791.  For this reason, the Sixth Circuit applied the first-to-file rule in *Baatz*, even though some of the plaintiffs in that action were not present in the second action:  "[W]hat matters for our purposes is that Columbia and the Medina Landowners would be parties to both actions.  This overlap satisfies the similarity of the parties factor."  *Id.* at 791.[2]  Likewise, there is a substantial overlap between PHI Health and its trade association, and those parties are sufficiently similar for the first-to-file rule to apply.

---

[2] This Court also may exercise its discretion, on it its own motion, to sever Empact's claims so as to permit them to proceed separately.  *See* Fed. R. Civ. P. 21; *Dearth v. Gonzales*, No. 2:06-CV-1012, 2007 WL 1100426, at *3 (S.D. Ohio Apr. 10, 2007).

**B.     The Issues and Claims Are Similar.**

The similarity of the issues or claims at stake also supports transfer.   In this action, PHI

Health seeks to litigate claims that are identical to the claims that it is pursuing, through its trade

association, in the District of Columbia action.   In both actions, it seeks to invalidate the No

Surprises Act rule governing the calculation of the qualifying payment amount (QPA) on the

grounds that the rule unlawfully excludes case-specific agreements from the QPA calculation.

*Compare* Compl. ¶ 217, ECF No. 1 *with* Mem. in Supp. of Pl.'s MSJ 22, ECF No. 5-1, *Ass'n of*

*Air Med. Servs. v. HHS*, No. 1:21-cv-03031-RJL (D.D.C. Dec. 10, 2021) ("*AAMS* MSJ").   It also

seeks the invalidation of that rule in both actions because the rule unlawfully treats hospital-owned

and independently-owned air ambulance providers alike.   *Compare* Compl. ¶ 226 *with AAMS* MSJ

27.   It further contends in both actions that the rule improperly defines the geographic regions to

be used for the QPA calculation.   *Compare* Compl. ¶ 211 *with AAMS* MSJ 29.   In both actions, it

contends that the Defendants' rules unlawfully limit the amount that it can collect in cost-sharing

from patients for out-of-network services.   *Compare* Compl. ¶ 234 *with AAMS* MSJ 31.[3]   And in

both actions, it contends that these rules have unlawfully required arbitrators to presume that the

qualifying payment amount is the appropriate payment amount for an out-of-network service.

*Compare* Compl. ¶ 189 *with AAMS* MSJ 15.[4]   Because PHI Health pursues the same claims in both

---

[3] Plaintiffs dispute whether this claim has been presented in both actions, because "the cost-sharing regulations are … not *directly* challenged in *AAMS*."   Opp'n 12 n.3 (emphasis added).   Any difference on this score is solely one of nomenclature.   In both actions, PHI Health has contended that it should be permitted to charge patients more in cost-sharing than would be permissible as a result of the Defendants' rule limiting a patient's cost-sharing obligation to the qualifying payment amount.

[4] Both actions now stand in the same procedural posture with respect to this claim, in light of recent litigation developments.   On July 26, 2022, another district court entered a judgment vacating the rule governing the arbitration of payment disputes involving out-of-network air ambulance services, to the extent that the rule contained provisions that it found to impose such a

actions, a judgment against the association in the District of Columbia action would "leave[] little or nothing to be determined" in this case with respect to these claims. *Baatz*, 814 F.3d at 791.

PHI protests that it is pursuing additional claims against the same rulemakings in this action. Opp'n 11. This is immaterial. "Just as with the similarity of the parties factor, the issues need only to substantially overlap in order to apply the first-to-file rule." *Baatz*, 814 F.3d at 791. Thus, in *Baatz*, even though one party had "add[ed] additional claims of conversion and unjust enrichment," "otherwise the two actions [were] identical" because the overlapping portions of the two cases "raise[d] the same claims arising under the same laws using the same theory of the case." *Id.* at 792. The same analysis applies here. The substantial overlap—indeed, the one-to-one correspondence—of numerous claims in the two actions is enough to satisfy the similarity of the issues factor.

This rule makes sense, given the likelihood that the District of Columbia action could have not only issue-preclusive effect, but also claim-preclusive effect, on the claims that PHI Health wishes to pursue here. *See Tahoe-Sierra Pres. Council*, 322 F.3d at 1082. PHI Health could have brought its additional challenges to the Defendants' rulemakings in the District of Columbia action. Those challenges all arise out of the same transactions or occurrences, namely, the Defendants' two rulemakings under the No Surprises Act. The application of the first-to-file rule to transfer the action to the District of Columbia thus may avert the preclusion of these additional claims. And if the District of Columbia faces any procedural issues as a result of the addition of these challenges to the litigation, the first-filed court "can tailor its proceedings to address this

---

presumption. *LifeNet, Inc. v. HHS*, --- F. Supp. 3d ---, No. 6:22-CV-162-JDK, 2022 WL 2959715 (E.D. Tex. July 26, 2022). The vacated portions of the rule are thus not currently in effect for PHI Health or for any other members of the trade association. The Defendants are preparing a final rule that will address the standards for these arbitrations, and they anticipate that this rule will be issued shortly.

concern." *Baatz*, 814 F.3d at 792.  Thus, the parties and the issues are sufficiently similar between the two actions for the first-to-file rule to apply.

      **C.**     **The District of Columbia Action Is the First-Filed Case.**

In addition, the chronology of events supports transfer.  "The dates to compare for chronology purposes of the first-to-file rule are when the relevant complaints are filed," *Baatz*, 814 F.3d at 790, and there is no dispute that the association filed its complaint in the District of Columbia action five months before the complaint in this case was filed.  Plaintiffs nevertheless dispute whether the chronology factor has been met, asserting that a lawsuit in a third district court instead qualified as the "first-filed" action.  Opp'n 14 (citing *Texas Med. Ass'n v. HHS*, --- F. Supp. 3d ---, No. 6:21-cv-425-JDK, 2022 WL 542879 (E.D. Tex. Feb. 23, 2022), *appeal docketed*, No. 22-40264 (5th Cir. Apr. 26, 2022) ("*TMA*")).  This is a red herring.

Neither the parties nor the issues are identical between *TMA* and this action.  No plaintiff in this action appeared or participated in *TMA*, and no plaintiff here is a member of the Texas Medical Association.  In contrast, as stated above, PHI Health is a member of AAMS, and it has actively participated in the Association's lawsuit in the District of Columbia.  *TMA*, moreover, involved only a challenge to portions of 45 C.F.R. § 149.510, the HHS regulation governing the standards for arbitration of out-of-network payment disputes involving physicians and health care facilities (along with the corresponding portions of the regulations issued by the Department od Labor and the Treasury).  PHI Health, in contrast—like its trade association in the parallel lawsuit—has challenged portions of a separate regulation governing air ambulance disputes, 45 C.F.R. § 149.520 (as well as the corresponding Labor and Treasury regulations).  "[T]he 'chronology of events' factor simply asks which of the two *overlapping cases* was filed first." *Baatz*, 814 F.3d at 790 (emphasis added).  This action and the District of Columbia action are

overlapping cases; this action and *TMA* are not.

In any event, even if this case could be transferred to the Eastern District of Texas, *but see* 28 U.S.C. § 1404(a); *In re Bozic*, 888 F.3d 1048, 1054 (9th Cir. 2018), there is no similar action that is currently pending in that district. The first-to-file rule is premised on the notion that two duplicative actions should not be pending in federal district courts at the same time. *See Baatz v. Columbia Gas Transmission, LLC*, 814 F.3d 785, 793 (6th Cir. 2016); *Galoski v. Stanley Black & Decker, Inc*., No. 1:14-cv-553, 2014 WL 4064016, at *2 (N.D. Ohio Aug. 14, 2014). *TMA* is no longer pending in district court, and thus it plays no role in the analysis. As between PHI Health and its trade association, there is no dispute that the association was the first to file suit. Given the substantial similarity between the parties and the issues in those two actions, this case should therefore be transferred to the District of Columbia.[5]

## D.    Equitable Considerations Support Transfer.

Finally, the equitable considerations also support transfer of this action to the District of Columbia. Given that the chronology of events, the similarity of the parties, and the similarity of the issues all support transfer to the District of Columbia, this Court should be reluctant to stay its hand, as "deviations from the [first-to-file] rule should be the exception, rather than the norm." *Baatz*, 814 F.3d at 792; *see also id.* at 793 ("declining to apply the first-to-file rule should be done rarely"). As Defendants noted in their opening memorandum, Mot. to Transfer 12, the transfer of this case would simply "ensure that all the issues are litigated in a single case" and would "consolidate the cases in the forum where the litigation is more developed." *Baatz*, 814 F.3d at

---

[5] For these reasons, the Eastern District of Texas erred in holding that *TMA* was the first-filed action as to an air ambulance operator's challenge to the regulations governing the standards for air ambulance payment disputes. *LifeNet, Inc.*, 2022 WL 2959715, at *5. Among other errors, that court ignored that there was no overlap between the plaintiffs in those two actions, and that the first-to-file rule does not apply where judgment has already been rendered in a first action.

792-93. There are thus no equitable reasons to decline a transfer.

Plaintiffs fail entirely to respond on this point, although they do briefly protest that they are not attempting to engage in "gamesmanship." Opp'n 16. This Court, however, need not engage in any inquiry into the subjective motivations of Plaintiffs or their counsel. It suffices to observe that, as an objective matter, this case presents an example of the type of "duplicative or piecemeal litigation" that the first-to-file rule aims to prevent. *Baatz*, 814 F.3d at 789. In any event, it is not Defendants' burden to show equitable considerations that weigh in favor of a transfer. Instead, the party that opposes transfer bears the burden to show compelling reasons *not* to apply the first-to-file rule, and Plaintiffs have not attempted to do so.[6]

## III.    Defendants' Obligation to Respond to the Complaint Should Be Deferred.

Finally, this Court should resolve the motion to transfer before proceeding further with this case, because "[j]udicial economy requires that another district court should not burden itself with the merits of the action until it is decided [whether] a transfer should be effected." *In re Apple Inc.*, 979 F.3d 1332, 1337 (Fed. Cir. 2020); *see* Defs.' Mot. to Defer Their Obligation to Resp. to Compl. 2, ECF No. 22. Plaintiffs dispute whether a stay of proceedings is warranted. Opp'n 19. But Defendants are not seeking a stay of proceedings. Instead, they simply request that the Court exercise its discretion to establish a sequence of events for this litigation, so that the question of transfer can be decided before either this Court or the District of Columbia proceeds further in this litigation. The first-to-file rule, after all, is a "principle of comity," *Baatz*, 814 F.3d at 793, and

---

[6] The Eastern District of Texas found "compelling circumstances" not to apply the first-to-file rule because it had already expended judicial resources to address the merits of a similar challenge to a No Surprises Act rulemaking, and there was a risk that its earlier ruling would be called into question if the District of Columbia court were to disagree with its legal reasoning. *LifeNet, Inc.*, 2022 WL 2959715, at *5. Whatever the merits may be of these rationales, these circumstances are not present here.

comity dictates that the transferee court should be permitted to decide in the first instance matters of case management in coordinating the first-filed and second-filed actions.

## CONCLUSION

All of the relevant factors weigh in favor of transfer of this action to the District of Columbia.  In any event, this Court need not engage in an in-depth analysis of the first-to-file rule to conclude that transfer is warranted.  Given the limited role that the second-filed court plays under this rule, it is enough to observe that the issues in this case and in the District of Columbia "*might* substantially overlap," *Delta T Corp.*, 2011 WL 13234316, at *3 (emphasis added). Therefore, for the foregoing reasons, the Court should transfer this case to the U.S. District Court for the District of Columbia, so that that court may determine whether it should be consolidated with *Association of Air Medical Services*.

Dated:  August 3, 2022                                     Respectfully submitted,

                                                                    BRIAN M. BOYNTON
                                                                    Principal Deputy Assistant Attorney General

                                                                    ERIC B. BECKENHAUER
                                                                    Assistant Branch Director

                                                                    */s/ Joel McElvain*
                                                                    JOEL McELVAIN
                                                                    Senior Trial Counsel
                                                                    ANNA DEFFEBACH
                                                                    Trial Attorney
                                                                    United States Department of Justice
                                                                    Civil Division, Federal Programs Branch
                                                                    1100 L Street, NW
                                                                    Washington, DC 20005
                                                                    Phone: (202) 616-8298
                                                                    E-mail: joel.l.mcelvain@usdoj.gov
                                                                    D.C. Bar No. 448431

                                                                    *Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify on this 3rd day of August, 2022, a true and correct copy of this document was served electronically by the Court's CM/ECF system to all counsel of record.


*/s/ Joel McElvain*
JOEL McELVAIN